Mr. Payne. Thank you, Your Honor. Your Honors, I'm Alan Payne, and I represent EM Logging, the appellant in this case. It's a sole proprietorship of Enos Miller. Now, Enos is a biblical name, and in the Bible, he's the son of Seth and the grandson of Adam and Eve. Now, according to the book of Genesis, Enos invented writing, which is unfortunate in our case, or maybe a bit ironic, because Mr. Miller, our Enos, Enos Miller, only ever received an 8th grade education. But he has 40 years of logging experience, 25 years of which was operating his own company. He successfully completed dozens of these forced service contracts. But in that case, Mr. Payne, doesn't it seem unusual when there's an explicit contract with precise provisions to treat it imprecisely? I'm not sure what you're referring to. I'm referring to the weight, the logging weight, the travel over the road, the notice, all of the things that the government says weren't done. Well, Your Honor, it's called the Big Steep Contract for very good reason. It's a very difficult and rugged terrain in a very remote area. And that's why, in this case, this contract has a provision in it. I would call it the flagrant disregard. Because the issue here, in this case, is not whether Mr. Miller breached the contract, because a breach isn't at issue here. It's a termination of the contract. The forced service terminated the contract, and to show that that termination was a valid action and not a breach of itself, they must show that he flagrantly disregarded the contract. Can I ask you about one? I know that there are three bases on which the Board said upheld the flagrant disregard. The weight limits, the hauling routes, and the delay of notification of missing the 12-hour aim of arriving after leaving the sale area. I want to ask you about the last of those three for a minute. Okay. Did the government, at any point in the proceedings, make the argument, which would have some foundation in the language of the provision, that pre-arrival notification was required? You know, Judge, I don't believe they made that argument, and I don't think, I don't read the contract as requiring that. I believe the contract just required that he provide notice that they were going to be delayed, because in the end, you're never going to know whether or not… I can get what the language says, and as I said, there is some basis in the language for that. There is some reason to think that might not make sense in this context. So I'm just asking a question about whether the government ever argued in this proceeding, at any stage, that pre-arrival notification was required, including during the events in question when there were communications between the contracting officer and Mr. Miller. Did the government say, you actually breached this provision by not giving me notice before you arrived? I am unaware that they ever made that argument. Precisely, what is the dispute about the notice of delay provision? And what I mean by that is, what do you argue Mr. Miller was required to provide in terms of timeliness of notice? And what did the government alternatively argue? Because that's what I see the nature of the dispute to be, some sort of disagreement over what timing the notice had to be given under. And so what is your argument about what this contract requires in terms of when reporting delay is acceptable? Our position, and Mr. Miller's position at the time, is that he only had to provide them notice that there had been a delay. There was no requirement that it be done at a particular time or within the 12 hours. Mr. Miller understood at the very beginning of this contract that was going to be a problem and he asked for a modification. The Forest Service held him to this, said no we're not going, you have to give us, any time you're more than 12 hours overdue, you have to let us know. Later on in January, towards the end, before he was suspended, they realized that that just was not workable in this case, and they offered a 24 hour extension, a modification that allowed him, if they were more than 24 hours late. But Mr., because they held him to the letter of the contract, I'd ask you to hold the Forest Service to the letter of the contract, that there was no requirement that it be made within those 12 hours. But on November 30th of 2010, there is an email in the record, it's not in the JA, we ordered the entire record. And so it was part of the proceeding below. It was an email sent at 6.57 AM, Jim, mule train ticket numbers ending in blank, blank, blank, were delayed more than 12 hours. Non-SAW load numbers blank, blank, blank, were delayed more than 12 hours also. I may have missed a few loads also, however I will call or text you with that information in a more timely manner. This was the email he sent in response to an email complaining about not receiving delay information. It was sent to, you know, that's Mr. Miller, right? Correct. It was sent to him where they were complaining that, you know, loads aren't getting here and you're not giving us a heads up. And so he reported to them delays he was aware of and said in the future he'll be more timely to let them know about these delays. So obviously he seemed to understand, at least from that record evidence, that there was a timeliness component. So it can't be as you're saying, right, that he could let them know years later and he's in compliance with the contract, right? There has to be some timeliness. I would agree. In reasonableness, and that's what we, you know, that's what was the issue, I think, at the hearing were these reasonable notices and that's what Mr. Enos. That said, I think that exchange that you're talking about, Judge, is that, you know, Mr. Miller understood the foresters had one view of the contract. And he was trying, you know, it wasn't necessarily his view, but when, you know, when you're the purchaser, you're trying to work with them, and they say, well, give us this notice, even if you don't think, necessarily think you have that requirement, it doesn't mean that you won't try to do it so that just to resolve issues and, you know, because you don't want to be in flagrant disregard. So you're trying, you know, you're trying to work with them. So disregard is okay, just not flagrant disregard. You know, that's what, you know, this isn't the contract you would have wrote or I would have wrote, but this is the contract terms we're at, and I think, you know. I strenuously object. Yes. So, anyway, I think, you know, getting back to, you know, what I think is the overarching issue here is, as Judge Moore was alluding to, was, you know, flagrant disregard and what does that mean. And I think the example given, you know, it talks about the, in the definition itself, it talks about statutory, excuse me, the flagrant disregard. The definition is a pattern of activity that demonstrates a flagrant disregard for the terms of this contract, such as, but not limited to, repeated suspensions for breach pursuant to B9.3. But the government does complain about flagrant disregard, particularly in the wait area. Are you saying that that was never really enforced in the past or that it's not a significant limitation? No, I, no, it's not at all, Judge Newman. What I'm alluding to here, well, first let me talk about the wait limits then. There was an honest dispute as to which wait limits applied. Was it the Montana statutory wait limits? In either case, at 100,000, it's over the most liberal or generous of these standards, whether it's the 84,000 or the 10% over, or whatever, there was the ticket or whatever you call it from the Forest Service. Or from the Highway Patrol, do you mean? Whoever it was. Yeah, there was one instance where one of his drivers forgot to extend the cab. And the evidence in the record on that is that had he extended the cab, he would have been in compliance with the, you know, the Montana statutory road limit amounts. Do I understand it right? Your position is that the record shows that violation of the Montana limit and otherwise provides no basis at all for saying that any other hauling trip violated a Montana limit. There's basis. No, there's basis because there were, this is what the Forest Service position was, that the scales at the lumber mill, they had the weight and it said, you know, that it would weight it, and there were different weights depending on what the loads were. But what you need is, you don't only need the weight, you need to know what the configuration of the truck was. So there's some evidence for that. But in order to show that there was ever any other load that violated the Montana limit, one would need to have information, which I gather is not in the record, about the length of the trucks. And the government simply never proved anything except that January 20th, 2011 overage. That's correct. At this point, I'll reserve the rest of my time. Okay, we'll continue the discussion with Ms. Lynch. Good morning, Your Honors. May it please the Court. We respectfully request that this Court affirm the Civilian Board of Contract Appeals determination upholding the Forest Service's termination of the EM logging timber sale contract. As this Court has discussed, the termination provision at issue requires that the Forest Service demonstrate that the purchaser had a flagrant disregard for the terms of the particular timber sale contract. So you agree that flagrant disregard is the sole basis on which the termination here can be upheld? That is correct, Your Honor. And you also agree, I take it from the absence of anything in your red brief about this, that snow plowing is not at issue? Snow plowing is not at issue. We simply have the route of haul, the weight limits, and the 12-hour notification. And am I right that on the weight limit, there is in this record, putting aside the Forest Service order, one and only one incident proven in the record of a violation of the Montana weight limits? That is correct, Your Honor. That is the only time that one of Mr. Miller's logging trucks was pulled over and ticketed for being overweight. Would I also be right in saying that at no point in this proceeding up until the time of this brief, of the brief in this Court, did the government assert coverage by the 1986 Forest Service weight rule? That was not a subject of discussion between Mr. Miller and the contracting officer. It wasn't an argument made by the government in the Board. Well, Your Honor, if you look at the two notifications of breach that relate to the use of road provisions, that's in the record at the Joint Appendix at 804 and 239. There were two notifications of breach, and at that time, what the Forest Service did, what the contracting officer did, was indicate that the weight limits were overweight for bridges accessing the Big Steep Timber Sale and for hauling across Forest Service roads and bridges from the Forest Service Timber Sale area. So we're not talking, at the time of those notifications of breach, the contracting officer was discussing simply Forest Service roads, nothing to do with Montana State roads. The contract provision includes a Forest Service order. Well, Your Honor, and the provision, the hauling provision, the use of road C6.846, which is in the record at 1253, it talks about complying with statutory load limits and then obtaining any necessary Forest Service or state permit. Yes. The Forest Service order that was issued in 1986 was issued pursuant to the Forest Service's statutory and regulatory authority. Right, but he said order of statute. Is that order a statutory load limit? Well, that order was issued pursuant to the Forest Service's statutory, but it is not a statute, Your Honor. So, you are accusing him of violating something that's not a statute, a law of the Forest Service's own order, but the contract provision simply says complying with statutory load limits. That is correct, Your Honor. The regulations and the orders issued pursuant to it have the force and effect of law, and then the provision would also be... Are you familiar with McLean? Yes, Your Honor. So, it's not a statute, it's a regulation. That is correct. It's kind of difficult to say flagrant disregard for violating something that he's not even necessarily clearly required to comply with under the requirement of the contract. But that was also, in the various notifications for breach, it indicated an overweight limit based on that 80,000 pound limitation, and so Mr. Miller was aware pursuant to the terms of the contract. You were complaining that he potentially was violating the Forest Service order, but given that the contract didn't require him to comply with it, why could it be flagrant disregard for him to not comply with your complaints about something he wasn't required to comply with? It's like a Dr. Seuss riddle. Yes, Your Honor. But the purpose of this 80,000 pound limitation, as Mr. Payne indicated, this particular region was a very difficult region to access, and it was a concern about safety, and the Forest Service was very concerned about that. Oh, I'm not saying it's a bad idea, I'm just saying how does it amount to flagrant disregard of a contract, right? A contract, when the contract doesn't contain a limitation. That is correct, Your Honor. But the provision itself also does make reference to obtaining a Forest Service permit to exceed the weight limitations, and that was not sought by Mr. Miller, nor was it obtained, and the Forest Service held him to this 80,000 pound limitation out of a concern, in addition, for safety, which was demonstrated by that 1986 order. He is doing something that isn't required by the contract. That seems like a very tough standard to impose upon him, doesn't it, when it's not one of his contract terms? Well, but this was, throughout contract performance, the contracting officer was indicating that this was what the limitation should be, and Mr. Miller did continue to disregard that. Isn't there some other section of the contract? I'm not as familiar with it as I'm sure you are, which probably has the ability to terminate for other reasons, like if he's being unsafe or something. I mean, I just, I'm finding it difficult to conclude that this constitutes flagrant disregard for the terms of the contract, when in fact what you're seeking to enforce against him here isn't one of the terms of the contract, but rather a general argument about safety, for example. Is there some other term in this contract that could have allowed the government to have pursued breach? You don't know. That's okay if you don't know. Sorry, Your Honor, there is no other provision for termination at this point. Can I ask you about this notification delay provision? Yes. That's a question that at least I tried to ask earlier. Did the government, have you contended here, did you contend before the board that that notification provision required pre-arrival notification? No, Your Honor. It does not require that. It's simply within a reasonable period of time, and in this case, the contract itself requires a 12-hour notification to the extent that hall limits are going to be done with, halls are going to be made at more than 12 hours, from when they leave the site to when they arrive at the mill, and that is for log accountability purposes. And maybe I missed something in the briefing or the record, but we do have evidence that there was one incident where the notification didn't occur for 13 days. 13 days. Otherwise, am I right, we don't have any evidence of any lengths of time of any of the other delay notifications? No, it is simply that that one incident of 13 days was the one that the contracting officer called out in the notification for briefs and suspension in November. So how could one instance of a 13-day delay amount to flagrant disregard of the contract? Well, that was, it wasn't simply one instance, that was the example that was provided in the, that was the example that the contracting officer provided, and that's what's currently on the record. And I have been through this record with a fine-tooth comb, and in fact, your answer to Judge Toronto is actually not correct. The record contains two instances in which there is noticeable delay. The other one was load number 452, where there was a four-day delay. The loads that Judge Toronto was talking about are 254 and 255. It's a truck and trailer, so it's not actually two separate loads, it's one cab carrying two things. But apart from that, I've been through every other receipt, every instance, every notification, and I can find no other instances where the record establishes that he did not timely notify the government of exceeding the 12-hour window. So my question is, given that the record contains no other evidence, which was the government's burden to put on, how can one instance of a 13-day delay in notification and one instance of a four-day delay be, quote, flagrant disregard for the terms of the contract? Well, that is in part, Your Honor, because the term of the contract is that 12-hour from leaving the timber sale area to arriving at the mill. And there were two instances where they – there were many instances where they did not meet the 12-hour requirement, and then they sought the deviation in the initial planning. You don't mean 12-hour requirement. I'm sorry. The 12-hour time period hauling period between the timber sale area and the mill. They sought a deviation for that in the initial receipt of the contract, did not receive that deviation. They wanted 24 hours to haul. They did not receive it. But now you're talking about apples and oranges. 12 hours is the time to haul, not the time to report that you will not be able to haul within 12 hours, right? Yes. What this contract term is about and what the breach is about isn't failure to arrive within 12 hours. As I understand the notifications, which I can quote for you all the page numbers they're on, it's about failing to notify the Forest Service that you will be delayed more than 12 hours or that you were, in fact, delayed more than 12 hours. It's not about the delay. It's about notification related to the delay, correct? That is correct. Yes, Your Honor. And so you can prove 1,000 instances of him exceeding 12 hours, but that's not what this breach is at all about at any point in this record. What it's about was the timeliness of notification of being delayed more than 12 hours. And on this record, we can only find two instances of potentially untimely notification. There may be many instances of delay, but only two instances of untimely notification. And my difficulty is how does that amount to flagrant disregard of the contract's term? Well, because of the sheer number of days, Your Honor, and you pointed out the four days and then there was the other 13-day period. And the purpose of this notification provision is to ensure that, because the Forest Service doesn't scale the logs, the Forest Service doesn't get any information about the number of logs taken off of the sale, which then translates into payment requirements for the purchaser, until the logs arrive at the mill and are weighed and scaled at the mill. So there's a concern about log accountability, which is why that provision exists. Was there any pattern of ignoring the notice that 13 days is too late and too long to wait to notify? It just seems, no one says otherwise, that they forgot to notify and that there was more precision and more attention paid to the notification requirement. I'm looking for some basis for flagrant disregard as opposed to human frailty. Yes, Your Honor, simply because Mr. Miller had been required to provide that notification and there had been concerns raised about the delays. So there were concerns raised in what happened? And then they at least continued the additional 13-day notification delay. When were the concerns raised? The concerns were raised very early on in the contract, which is again why the Forest Service contracting officer declined to permit the 24-hour period for notification, period for hauling rather than the 12-hour. I didn't see anything in the record earlier at all about failure to notify about not falling within the 12-hour period. I saw in the record discussions about the 12-hour period is hard to comply with. We would really like to have 24 hours. That's correct, Your Honor. So I didn't see any notification or discussion that there had been a failure to notify when you fall outside the 12-hour window. No, Your Honor, but this is all, again, this is all of a piece in that particular provision. That is why that 12-hour period exists, why it was not permitted for Mr. Miller at this time in this contract to have the 24-hour notice, 24-hour haul period instead of simply the 12-hour haul period. There were concerns about the ability to get the logs from the sale to the mill. In addition, there was the route of haul problem. Mr. Miller sought approval to haul to Eureka. That approval was denied by the Forest Service, and there was one instance where Mr. Miller did indeed haul to Eureka, which is having sought the deviation. One instance in which he hauled to Eureka in which this record establishes that his driver got sick and had to go to the hospital. And so they deviated from the driver, the one, the only person in the cab got sick and had to go to the hospital. And the record evidence establishes this undisputedly that he deviated and went to the hospital. That is the deviation which you think constitutes flagrant disregard of contract term. Having sought and not received that approval, yes, Your Honor. One instance, so remember a little while ago you were telling me I ought to take into account safety and concerns for safety. Even though the contract doesn't say the Forest Service order should apply, safety was an important governing principle. Wouldn't that apply here as well? I mean, if this guy is so sick he needs to go to the hospital, you would prefer he doesn't deviate from the route? Well, Your Honor, yes, Your Honor. There's no hospital on route, right? That is correct, Your Honor, yes. For these reasons and the reasons outlined in our brief, we respectfully request that the Court affirm the CBCA's decision. Thank you, Your Honor. Thank you, Ms. Lynch. Mr. Payne. You know, the Forest Service gave three reasons to find Enos Miller flagrant disregard. Delay, wait limits, haul routes. I think what we've established today, there were two instances of delay of notification. One instance of wait over limit and one instance of deviation from the haul route due to illness and hospitalization of the driver. I, on that record, I don't believe any court can reasonably find that Mr. Miller flagrantly disregarded the terms of his contract. That's all I have, Your Honor. Any more questions? Okay. Thank you. Thank you both. The case has taken early submission.